**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------------X
                                                     :

IN RE:                                     : Misc. Case No. _____

                                                     :

APPLICATION OF MAURICIO MOTA FOR    :
AN ORDER TO TAKE DISCOVERY FOR USE IN   :
FOREIGN PROCEEDINGS PURSUANT TO      :
28 U.S.C. § 1782.                                  :

                                                     :

---------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION**
**FOR AN ORDER TO TAKE DISCOVERY FOR USE**
**IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**


MACAULEY LLC
300 Delaware Avenue, Suite 1018
Wilmington, DE  19801-1607
(302) 656-0100

*-and-*

HINE & OGULLUK LLP
30 Wall Street, 8th Floor
New York, New York  10005
(212) 300-7390

*Attorneys for Applicant Maurício Mota*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ................................................................. 4

    A.    THE BATISTAS' CENTRAL ROLE IN THE ONGOING BRAZILIAN CORRUPTION SCANDAL .... 4

    B.    THE BATISTAS CREATED AND USED BLESSED HOLDINGS LLC TO HIDE ILLICIT FUNDS .. 6

ARGUMENT ......................................................................................... 9

    A.    THE LEGAL FRAMEWORK OF SECTION 1782 ................................................ 9

    B.    THIS APPLICATION SATISFIES ALL THREE OF THE REQUIREMENTS OF SECTION 1782 ... 11

        1.    The Respondents All Reside or Are "Found" in This District ............................. 11

        2.    The Discovery Sought Is "For Use" in a "Foreign Tribunal" .............................. 12

        3.    Applicant Is an "Interested Person" ................................................................. 14

    C.    THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THE APPLICATION ..... 14

        1.    Respondent Blessed LLC Is Not a Party in the Foreign Proceedings.................... 14

        2.    Brazilian Courts Are Receptive to Discovery Pursuant to Section 1782.............. 15

        3.    The Application Is Sought in Good Faith and Not To Circumvent Foreign Proof-Gathering Restrictions.................................................................. 16

        4.    The Discovery Sought Is Neither Unduly Intrusive Nor Burdensome ................. 17

CONCLUSION.................................................................................... 18

# TABLE OF AUTHORTIES

**Page(s)**

CASES

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
   673 F.3d 76 (2d Cir. 2012)............................................................................ 11, 12, 13

Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,
   798 F.3d 113 (2d Cir. 2015)................................................................................. 12, 13

In re Air Crash Near Peixoto de Azevedo, Brazil, on September 29, 2006,
   574 F. Supp. 2d (E.D.N.Y. 2008) .............................................................................. 12

In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. 1782,
   No. 17-4269-KM-JBC (D.N.J. Jan. 10, 2019) ........................................................... 16

In re Application of BANCO SAFRA S.A. for an Order Pursuant to
   28 U.S.C. § 1782 To Conduct Discovery for Use in Foreign Proceedings,
   No. 1:14-mc-00270-P1 (S.D.N.Y. Aug. 26, 2014) ................................................... 15

In re Application of Biomet Orthopaedics Switzerland GMBH,
   742 Fed. Appx. 690 (3d Cir. 2018).............................................................. 10, 11, 14

In re Application of Joesley Mendonca Batista, Wesley Mendonca Batista,
   Francisco De Assis E Silva, and Ricardo Saud for an Order To Take
   Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782,
   No. 1:19-mc-04 (E.D. Va. Mar. 4, 2019).................................................................. 15

In re Application of Pimenta Pursuant to 28 U.S.C. § 1782
   for Judicial Assistance in Obtaining Evidence in This District,
   942 F. Supp. 2d 1282 (S.D. Fla. 2013) ............................................................... 12, 15

In re Application Pursuant to 28 U.S.C. § 1782,
   249 F.R.D. 96 (S.D.N.Y. 2008) ................................................................................ 13

In re Application Pursuant to 28 U.S.C. § 1782 for an Order Permitting Bayer AG,
   Applicant-Appellant, To Take Discovery, Pursuant to the Federal Rules
   of Civil Procedure, of Betachem, Inc., for Use in an Action Pending
   in the First Instance Court No. 25 of Barcelona, Spain,
   146 F.3d 188 (3d Cir. 1998)..........................................................................................10, 11, 14

In re Chevron Corp.,
   633 F.3d 153 (3d Cir. 2011).............................................................................................11, 13

In re Edelman,
   295 F.3d 171 (2d Cir. 2002).............................................................................................11, 12

In re Gemeinschaftspraxis Dr. Med. Schottdorf,
   No. Civ. M19-88 (BSJ), 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006).................10

In re Letter of Request from Supreme Court of Hong Kong,
   138 F.R.D. 27 (S.D.N.Y. 1991) ...............................................................................................10

In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,
   539 F.2d 1216 (9th Cir. 1976) ............................................................................................9, 10

In re O'Keefe,
   646 Fed. Appx. 263 (3d Cir. 2016) ...................................................................................10, 16

In re Servicio Pan Americano de Proteccion, C.A.,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004)....................................................................................15

Intel Corp. v. Advanced Micro Devices, Inc.,
   542 U.S. 241 (2004)......................................................................................................... *passim*

Mees v. Buiter,
   793 F.3d 291 (2d Cir. 2015)........................................................................... 10, 11, 12, 16, 17

Minatec Fin. S.a.r.l v. SI Group, Inc.,
   No. 1:08-CIV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008).... 16

Pinchuk v. Chemstar Prods. LLC,
  No. 13-mc-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014) ........................................ 11

<u>S</u>TATUTES

28 U.S.C. § 1782 ..................................................................................................................... *passim*

Applicant Maurício Mota ("Applicant" or "Mr. Mota") respectfully submits this memorandum of law in support of his *ex parte* application (the "Application"), pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain discovery pursuant to Rule 45 of the Federal Rules of Civil Procedure from Colorado Investment Holdings LLC f/k/a Blessed Holdings LLC (Delaware) ("Blessed LLC" or "Respondent"), an entity incorporated and found in this judicial district, for use in a foreign legal proceeding pending in Brazil federal court.

PRELIMINARY STATEMENT

Applicant seeks discovery of evidence located in the U.S. for use in a legal proceeding pending in Brazil that arises out of specific fraudulent transactions undertaken in connection with one of the largest bribery and financial scandals in that country's history. Applicant is a Brazilian national who has commenced a "Popular Action" currently pending in Brazil's federal court against, *inter alia*, Joesley and Wesley Mendonça Batista and their companies, including Brazilian meat-processing conglomerate JBS S.A. ("JBS") and J&F Investimentos S.A. ("J&F"), to recover billions of dollars of public funds the Batistas admittedly obtained illicitly as part of a massive and widely-reported corruption and bribery scandal.[1]

The Batistas, a pair of infamous billionaire brothers who control JBS and its affiliates, are confessed criminals and have been arrested for their financial crimes and corruption. They and the companies they control were and continue to be the subjects of numerous criminal, regulatory and civil investigations and proceedings. As part of their criminal prosecutions in Brazil, the Batistas have confessed to, among other things, flagrant and extensive political

---

[1] Mr. Mota is a Brazilian lawyer and former dean of the Law School of Rio de Janeiro and a public attorney in the State of Rio de Janeiro. He has brought suit in Brazil pursuant to applicable Brazilian laws which authorize that country's citizens to commence and prosecute such "popular" actions to recover public funds.

corruption, including a sweeping bribery conspiracy in which JBS, the Batistas and five other JBS executives admittedly paid over *$150 million in bribes to over 1,800 politicians and government officials over the course of a decade*, the proceeds of which were used to acquire U.S. companies. As part of a plea deal in 2017, the Batistas' investment holding company, J&F, agreed to pay $3.2 billion in penalties and fines.[2]

As fully explained in the attached complaint that Applicant filed to commence the legal proceeding pending in Brazil (the "Popular Action"), a particularly troubling aspect of this bribery scheme is that the Batistas used illicitly obtained public Brazilian funds to acquire for themselves or their family members control of U.S. companies and/or assets located in the U.S., and relatedly, concealed the illicitly obtained Brazilian public funds through transactions in the U.S. designed and implemented by their U.S. bankers and agents. As alleged in the Popular Action, the Batistas – with the assistance of their U.S. agents and advisors – orchestrated a sham transaction whereby the Batistas and JBS acquired a rival meat processing company, Bertin S.A. ("Bertin"). In connection with that fraud, the Batistas and their agents created a Delaware company, Blessed LLC, into which they dumped billions of dollars in illicitly obtained assets to hide them from Brazilian tax and other authorities. Thereafter, these assets (originally placed into Blessed LLC) were forwarded to two insurance companies and other offshore entities for further laundering. Official records from the Delaware Department of State (Division of Corporations) show that the corporate name of Blessed LLC has now been changed to "Colorado Investment Holdings LLC," a likely further attempt to cover their tracks. These illicit

---

[2] See Declaration of William J. Hine, Esq. ¶¶ 1-7 (Dec. 27, 2019) ("Hine Decl."). All "Exhibit" references herein are to the exhibits annexed to the Hine Declaration. Exhibit A is the Portuguese language complaint in the Brazilian Popular Action, and Exhibit B is a certified English translation of that complaint.

transactions go to the heart of the Popular Action and are the focus of Mr. Mota's Section 1782 Application to obtain discovery of evidence located in the U.S.

In connection with Brazilian criminal proceedings, Joesley Batista admitted that Blessed LLC was formed with the help of J.P. Morgan & Chase Co. ("JPMC") and two of its employees, Fabio Pegas and Patricia Pratini de Moraes. A Parliamentary Investigative Committee commissioned by the Brazilian House of Representatives to study these issues ("CPI") made similar findings.[3] That official investigation also revealed that an account maintained at JPMC was used to funnel funds used to pay bribes in Brazil, and, on information and belief, certain of such funds may have passed through Blessed LLC. Applicant seeks discovery into these efforts to hide public funds for use in prosecuting his claims in the Popular Action. For that reason, Applicant has also commenced a Section 1782 application in New York to secure discovery in that judicial district from JPMC and individuals involved in this scheme.[4]

As explained below, this Application should be granted because the statutory requirements of Section 1782 are satisfied and the discretionary factors identified by the U.S. Supreme Court in its seminal decision of <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241 (2004) ("<u>Intel</u>"), weigh heavily in favor of granting the requested relief. Section 1782 is satisfied because: (i) the discovery is sought from a Delaware entity (Blessed LLC) that resides or can be "found" in this judicial district; (ii) the discovery of this evidence will be used by the Applicant in the prosecution of his claims in the pending Popular Action; and (iii) Applicant Mr. Mota is an "interested person," as the named plaintiff in the Popular Action. The discretionary factors set forth in <u>Intel</u> also weigh decidedly in favor of granting this Application: (i)

---

[3] <u>See</u> <u>Exhibit C</u> (excerpts from CPI Report) at 100-03 (explaining scheme and JPMC's role).

[4] <u>See</u> <u>In re Application of Mauricio Mota for an Order To Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782</u>, No. 19-mc-00573 (KPF) (S.D.N.Y.)

Respondent Blessed LLC is not a party in the legal proceeding pending in Brazil, is located in this district and may be beyond the jurisdiction of the Brazilian courts; (ii) the foreign tribunal (Brazil) is generally receptive to U.S. assistance in judicial matters and will be receptive to the evidence obtained here through Section 1782; (iii) Applicant is seeking discovery in good faith for use in connection with the prosecution of his claims in the Popular Action; and (iv) the discovery is not unduly intrusive or burdensome, rather, through the proposed subpoena, Applicant proffers narrowly-tailored document requests and seeks related focused deposition testimony to discover evidence to be used in the pending Popular Action.[5]

## FACTUAL BACKGROUND

JBS is the world's largest meat-processing company. The company, which is publicly traded on the São Paulo Stock Exchange, rapidly grew from a small family-owned business to an international conglomerate with over 250 subsidiaries spanning five continents. Even so, JBS remains largely family-owned and controlled by the Batistas (the family's holding company, J&F, owns more than 40 percent of JBS) and is the focal point of the Batista family's corruption.

### A. THE BATISTAS' CENTRAL ROLE IN THE ONGOING BRAZILIAN CORRUPTION SCANDAL

The widely-reported public corruption scandal in Brazil, which first broke in 2016, uncovered that the Batistas, JBS and its affiliates have, since at least 2003, been involved in multiple brazen schemes involving billions of dollars of bribes and corrupt deals. (See Exhibit D (Letter from U.S. Senators Marco Rubio and Robert Menendez, dated Oct. 8, 2019) at 1; see also Exhibit E at 2) Brazilian federal prosecutors undertook multiple concurrent investigations (and subsequent prosecutions), including for tax evasion, corrupt dealings with state-owned banks and

---

[5] Appellant intends to depose Respondent Blessed LLC about the subject matter of the Popular Action (including its involvement with the transactions referenced therein) as well as any documents produced in connection with the subpoenas *duces tecum* the Court may authorize in connection with this Application.

pension funds, and widespread bribes to hundreds of public officials. (See, e.g., Exhibit E at 3 nn.2-6) For example, Brazilian prosecutors launched several political corruption investigations related to an extensive bribery conspiracy in which JBS, the Batista brothers, and five other JBS executives paid over $150 million in bribes to over 1,800 politicians and government officials over the course of a decade. (See, e.g., Exhibit D at 1; see also Exhibit C at 109 (citing R$1.496 billion in confessed kickbacks); Exhibit E at 2) By May 2017, the Batistas and their family's investment holding company, J&F, accepted a plea deal with Brazilian law enforcement, acknowledging their criminal conduct, including bribery, corruption and fraud. As part of a so-called "Leniency Agreement," entered into by the Batistas as part of their plea agreement with prosecutors, J&F agreed to pay the Brazilian government $3.2 billion. (See Exhibit D at 1; see also Exhibit C at 117 (citing R$ 1.75 billion in penalties))

Of particular interest in the Popular Action (and here) is the Batistas' ongoing scandal involving JBS's relationship with Brazil's National Bank for Economic and Social Development ("BNDES"), which began in 2003 with the implementation of a "national champions" program aimed at promoting the country's home-grown industries. Payoffs of more than $150 million by the Batistas and their companies led to them receiving over $2 billion in loans and financing from BNDES between 2005 and 2015, according to a Brazilian government report. (See Exhibit C at 24-49 (describing BNDES support of Batistas' acquisitions); id. at 70-76 (citing excerpts from Joesley Batista's plea agreement highlighting bribes of BNDES and other officials); Exhibit B at 54, 57, 68, 70 (describing bribery program)) Critically, this bribe-driven BNDES financing underwrote many global acquisitions for the Batistas, including their acquisitions of U.S.-based Swift & Company (June 2007), Smithfield Beef (2008), Five Rivers Cattle Feeding (2008) and Pilgrim's Pride (2009). (See Exhibit B at 54 (Joesley Batista confessed to securing, through

bribery, approximately $2 billion from BNDES "to support the [JBS] expansion plan of 2009");
id. at 57 (use of BNDES funds to acquire Pilgrim's Pride); id. at 57 n.29 (describing use of
BNDES funds for U.S. acquisitions); id. at 68, 70 ($50 million in illegal kickbacks to secure $2
billion in BNDES funding); Exhibit C at 24-49; Exhibit D at 1)  In other words, JBS and the
Batistas admitted criminal conduct, including bribing numerous public officials at the highest
levels of government, to obtain funds they used to acquire U.S. companies.

   B.   THE BATISTAS CREATED AND USED BLESSED LLC TO HIDE ILLICIT FUNDS

   The fraudulent conduct at issue in the pending Popular Action commenced by Applicant
is a transaction whereby JBS and the Batistas acquired rival Bertin through a sham "merger"
using illicitly obtained funds from BNDES, the particulars of which are recited in great detail in
the complaint in the Popular Action.  (See Exhibit B at 12-63; Exhibit C at 93-108)  In sum, the
Batistas disguised this outright acquisition as a purported "merger" by greatly overvaluing
Bertin.  For purposes of public disclosure, Bertin was valued at approximately R$ 12 billion,
when in fact it was worth only about R$ 3.5 billion.  (See Exhibit B at 27-28 (citing R$
9,788,470,628.32 over-valuation); id. at 31-53 (describing over-valuation and return of
"overage" to the Batistas, through Blessed LLC); see also Exhibit C at 94 (citing R$ 9.46 billion
overvaluation of Bertin); id. at 99-100 (discussing R$ 9.7 billion premium); id. at 106 (similar))
Through bribery, corruption and other misdeeds, the Batistas secured equity resulting from this
over-priced acquisition from government agencies, principally BNDES.   (See Exhibit B at 53-55
(describing kickback scheme used to secure BNDES funding); Exhibit C at 93-108 (discussing
Bertin fraudulent scheme))  This overvaluation provided sellers (the Bertin family) an indirect
equity of 22.56 percent in the resulting company, which was then transferred to the Batistas by
means of two assignment agreements for the phoney prices of R$ 10,000 and R$ 17,000.  The

22.56 percent indirect equity in JBS, which corresponds to the artificial shares issued as a result of the overvaluation of Bertin's assets acquired at the time, is still in the possession of the Batistas. In short, Applicant has alleged that the Batistas used illicitly obtained government funds to purchase an over-priced asset to obtain a greater stake in the resulting company, causing losses to BNDES.

The Batistas recouped this huge overpayment for themselves (instead of for all JBS shareholders) through the use of a secret "off-the-record contract" (not disclosed to the public or to other Bertin or JBS shareholders) whereby the overage was secretly paid into an entity formed in Delaware with the help of New York-based bankers and advisers, i.e., JPMC and its employees. (Exhibit B at 39-53; Exhibit C at 100-02) That entity, into which the illicitly obtained proceeds of the fraud were placed, was Blessed LLC, a company created and managed by JPMC for this very purpose, and the subject of this Application. (See Exhibit B at 2, 47; Exhibit C at 100) Through this secret agreement between the Batistas and Bertin, approximately 22.56 percent of JBS shares (which was reportedly transferred to Bertin in this "merger") was returned to the Batistas in two stages, including through phoney sales to Blessed LLC by means of two assignment agreements for the nominal prices of R$ 10,000 and R$ 17,000. (See Exhibit B at 44-46; Exhibit C at 93, 96-97 (citing illicit R$ 1.00 "repurchase call option"); id. at 104 (describing other transfers to Blessed LLC for nominal amounts)) Several other transfers were made, including to offshore insurance companies (Cayman Islands-based Lighthouse Capital Insurance Company and Puerto Rico-based U.S. Commonwealth Life). (See Exhibit B at 33, 47-48; Exhibit C at 104-05) Other illicit transfers were made to entities owned and controlled by Blessed LLC, including Formentera Holdings and Mustique Enterprises, both located in the Bahamas. (See Exhibit B at 48 n.23; Exhibit C at 102) Records from the Delaware Department

of State (Division of Corporations) show that the corporate name of Blessed LLC has now been changed to "Colorado Investment Holdings LLC," a likely further attempt to cover their tracks. (See Exhibit F (Blessed LLC entity information and Delaware Department of State record showing name change)).

The net effect of all these machinations – which were designed and orchestrated by JPMC – was to secretly transfer billions to the Batistas, most of which properly belonged to the Brazilian government or to other shareholders of JBS. (See Exhibit B at 53 ("Through this exercise, together, the Batista Brothers obtained two conniving objectives: not only did they keep control of JBS by illegally diluting minority shareholders – BNDESPar being the main one – but also took over an artificial stake of 17.4% in JBS – which was worth R$ 2,911,274,402.00 on December 31, 2009 …."); Exhibit C at 98 (excess funds should have been returned to all JBS shareholders), 106 ("The intricate structure the Batista family erected definitively proves the BERTIN merger, as implemented, always aimed at obtaining illegal gains to the detriment of the treasury and minority shareholders, including BNDES and pension funds, which were diluted unduly as a consequence of this fraudulent scheme.").

In connection with this scheme, the Batistas even utilized an account at JPMC to make payments of some of the bribes to Brazilian officials to get this sham transaction approved and past Brazilian regulators. (See Exhibit C at 102) As alleged in the Popular Action, this account was used by JBS controlling shareholders to deposit the bribes paid to the Brazilian Workers' Party, and in particular to Brazil's Minister of Finance (and former BNDES Chairman) Guido Mantega, in exchange for the public funds needed to fund this expansion of JBS (through the Bertin acquisition). (See Exhibit B at 49 n.23 ("Joesley Batista confessed that, at one point, the

account held US$150 million."); <u>Exhibit C</u> at 102)[6]  On information and belief, funds placed into this JPMC account may have been passed through Blessed LLC.

While the particulars of this extensive fraud and bribery scheme are still being uncovered, there is certainly a valid basis (and compelling interest) for Applicant to obtain relevant evidence located in the U.S. for use in the Popular Action.  Indeed, most of the allegations in the Popular Action are drawn from information uncovered by Brazilian investigators or admitted to by the Batistas themselves in plea agreements or testimony.  The Applicant needs this U.S. discovery into the creation and use of Blessed LLC, *inter alia*, to trace these illicitly transferred Brazilian public funds to the above-mentioned (and perhaps other) offshore entities and accounts.

## ARGUMENT

### A.  THE LEGAL FRAMEWORK OF SECTION 1782

Section 1782 permits district courts to grant discovery for use in a foreign proceeding. The statute states, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other things for use in a proceeding in a foreign or international tribunal ….  The order may be made … upon the application of an interested person ….

28 U.S.C. § 1782(a) (2019).

District courts routinely grant Section 1782 applications on an *ex parte* basis.  Such applications are "customarily received and appropriate action taken with respect thereto *ex parte*," <u>In re Letters Rogatory from Tokyo Dist., Tokyo, Japan</u>, 539 F.2d 1216, 1219 (9th Cir. 1976), because "witnesses can ... raise[] objections and exercise[] their due process rights by

---

[6]  Notably, Patricia Pratini de Moraes, one of the JPMC bankers who helped structure this secret deal, is the daughter of a former member of the JBS Board of Directors (Marcus Vinicius Pratini de Moraes).  (<u>See</u> <u>Exhibit B</u> at 48-49 n.23; <u>Exhibit C</u> at 101-03)

motions to quash the subpoenas." Id.; In re Letter of Request from Supreme Court of Hong Kong, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ("Indeed, such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request, and will then have the opportunity to move to quash the discovery or to participate in it."); see also In re O'Keefe, 646 Fed. Appx. 263, 265 (3d Cir. 2016) (explaining that district court had granted *ex parte* application and heard motion to quash by subpoena recipient); In re Gemeinschaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSJ), 2006 U.S. Dist. LEXIS 94161, at *1 (S.D.N.Y. Dec. 29, 2006) (denying motion to quash subpoena issued *ex parte* under § 1782).

A district court may grant a Section 1782 application where:  (1) the person from whom discovery is sought resides or is found within the district in which the application is filed; (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.  In re Application Pursuant to 28 U.S.C. § 1782 for an Order Permitting Bayer AG, Applicant-Appellant, To Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Betachem, Inc., for Use in an Action Pending in the First Instance Court No. 25 of Barcelona, Spain, 146 F.3d 188, 193 (3d Cir. 1998); Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015); see also In re Application of Biomet Orthopaedics Switzerland GMBH, 742 Fed. Appx. 690, 696 (3d Cir. 2018) ("we consider the [Section 1782] statutory requirements modest *prima facie* elements.").

Once these statutory requirements are satisfied, the district court has the discretion to grant discovery under Section 1782.  See Mees, 793 F.3d at 197.  The U.S. Supreme Court has identified four factors (the "Intel factors") that "bear consideration" in the court's exercise of that discretion:  (1) whether "the person from whom discovery is sought is a participant in the foreign

proceeding," in which case the need for discovery may not be apparent; (2) "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." Id. at 298 (citing Intel, 542 U.S. at 264-65); see In re Chevron Corp., 633 F.3d 153, 161-62 (3d Cir. 2011) (adopting and applying Intel factors); Pinchuk v. Chemstar Prods. LLC, No. 13-mc-306-RGA, 2014 WL 2990416, at *1-2 (D. Del. June 26, 2014) (similar). "[T]he statute has, over the years, been given increasingly broad applicability." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) (internal quotations omitted); see In re Bayer AG, 146 F.3d 188, 191-92 (3d Cir. 1998) (describing liberalized procedures and discretion granted to courts under Section 1782). "A court should apply these factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" Biomet Orthopaedics, 742 Fed. Appx. at 696 (quoting Intel); see also In re O'Keefe, 646 Fed. Appx. 263, 267-68 (3d Cir. 2016).

B. THIS APPLICATION SATISFIES ALL THREE OF THE REQUIREMENTS OF SECTION 1782

1. *Respondent Blessed LLC Resides or Is "Found" In This District*

The first statutory requirement, which requires that the person from whom discovery is sought be "found" or "reside" within this district, is liberally construed. In re Edelman, 295 F.3d 171, 179-80 (2d Cir. 2002). In this case, Blessed LLC was created and incorporated in Delaware. (See Exhibit F (Blessed Holdings LLC Statement of Organizer and Delaware Department of State records reflecting incorporation on December 16, 2009 and name change to

"Colorado Investment Holdings LLC")) According to the Delaware Department of State (Division of Corporations), Blessed LLC's registered agent is Incorporating Services, Ltd., 3500 S. Dupont Highway, Dover, DE 19901. (See Exhibit E) Blessed LLC is therefore clearly "found" in this judicial district for purposes of Section 1782. See In re Edelman, 295 F.3d at 179-80 (mere "physical presence" sufficient to satisfy "is found" prong of Section 1782) (citations omitted).

2. *The Discovery Sought Is "For Use" in a "Foreign Tribunal"*

It is beyond dispute that Brazilian courts qualify as "foreign tribunals" for purposes of Section 1782. See, e.g., In re Application of Pimenta Pursuant to 28 U.S.C. § 1782 for Judicial Assistance in Obtaining Evidence in This District, 942 F. Supp. 2d 1282, 1288-90 (S.D. Fla. 2013) (allowing Section 1782 discovery for use in Brazilian probate proceeding); see also In re Air Crash Near Peixoto de Azevedo, Brazil, on September 29, 2006, 574 F. Supp. 2d 272, 278 (E.D.N.Y. 2008) (recognizing propriety of Section 1782 discovery in aid of Brazilian civil litigation). Further, the Popular Action has been filed and is currently pending in Brazil federal court. (See Exhibits A & B)

To qualify as "for use" in a foreign tribunal for purposes of Section 1782, the applicant need only show that the materials sought "will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." Mees, 793 F.3d at 298 ("[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement."); Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015) (Section 1782 merely requires showing that the evidence "is something that will be employed with some advantage or serve some use in the [foreign] proceeding."); Brandi-

Dohrn, 673 F.3d at 82-84 ("for use" requirement does not mean that the evidence must be admissible in foreign tribunal); In re Chevron Corp., 633 F.3d at 163 ("as the Court made clear in Intel, there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to section 1782 in the United States.").

Here, Applicant Mota seeks the production of documents relating to issues central to his claims in the Brazilian proceeding. As alleged in the Popular Action, the formation of Blessed LLC in Delaware, the funding of the company with illicitly obtained proceeds from the fraudulent Bertin acquisition, and the subsequent off-shoring of such funds to insurance companies located in the Cayman Island and Puerto Rico and to two other entities located in the Bahamas goes to the very heart of the allegations in issue in this Popular Action. (See Exhibit B at 33, 47-51; Exhibit C at 97-98, 104-07) This scheme, designed by New York bankers (JPMC and two of its employees) (see Exhibit B at 39-53; Exhibit C at 100-02), as well as the use of the JPMC account to actually facilitate the payment of bribes to Brazilian officials to effect this massive fraud (see Exhibit B at 49 n.23; Exhibit C at 102), is a legitimate subject of discovery, and the documents produced in such discovery will greatly aid Applicant's prosecution of these claims before the Brazilian tribunal.

At the very least, it cannot credibly be argued that this discovery is ancillary or in any way irrelevant or of no use to the litigants in the Popular Action. See In re Application Pursuant to 28 U.S.C. § 1782, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding that the requested evidence was relevant to the foreign proceeding, and therefore could be "for use" in the foreign proceeding). The evidence located in this district certainly will aid the Brazilian court in adjudicating this matter or, at a minimum, will "serve some use ... in the [foreign] proceeding" to the Applicant. Certain Funds, 798 F.3d at 120; In re Chevron Corp., 633 F.3d at 162 ("[T]he

party opposing discovery [under Section 1782] has the burden of demonstrating offense to the foreign jurisdiction" and that the foreign court would not consider the discovery sought) (citing In re Bayer AG, 146 F.3d at 196); see also In re Biomet Orthopaedics, 742 Fed. Appx. at 698-99.

### 3. *Applicant Is an "Interested Person"*

An "interested person" under Section 1782 includes litigants in the foreign proceeding in connection with which the discovery is sought. See Intel, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested party' who may invoke § 1782.") As shown by the Popular Action complaint, Applicant Mota is the named plaintiff seeking to put an end to the corrupt expatriation of Brazilian public funds to the U.S. and elsewhere to line the overseas pockets of the Batistas and JBS at the expense of Brazilian citizens. (See Exhibits A & B at 1-3) He clearly is an "interested person" under this statute.

### C. THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THE APPLICATION

As noted, once the statutory requirements of Section 1782 are met, the Court has the discretion to order the requested discovery. In exercising that discretion, the Court considers the four Intel factors. Here, each factor weighs in favor of granting discovery.

### 1. *Respondent Blessed LLC Is Not a Party in the Foreign Proceedings*

Section 1782 discovery is warranted where, as here, the parties from whom discovery is sought are not parties to the foreign proceeding. See Intel, 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unattainable absent § 1782 aid."). Respondent Blessed LLC is not a party to the Popular Action pending in Brazil. (See Exhibit A at 1-2; Exhibit B at 2-3 (caption showing none of Respondents is a party)). Accordingly, there is no danger here that obtaining evidence from this third party in the U.S. will in any way disrupt or

interfere with the jurisdiction or proceedings of the Brazilian courts. And, since Blessed LLC is a Delaware entity and not before the court in Brazil, it is not likely to provide this discovery absent an order of this Court. Thus, the first <u>Intel</u> factor is satisfied.

  *2. Brazilian Courts Are Receptive to Discovery Pursuant to Section 1782*

  Courts have determined that Brazilian courts are receptive to evidence obtained in the United States pursuant to Section 1782. <u>See, e.g.</u>, <u>In re Application of BANCO SAFRA S.A. for an Order Pursuant to 28 U.S.C. § 1782 To Conduct Discovery for Use in Foreign Proceedings</u>, Misc. No. 1:14-mc-00270-P1 (S.D.N.Y. Aug. 26, 2014) (copy of the application and order allowing discovery in aid of Brazilian proceeding attached hereto as <u>Exhibits G & H</u>); <u>see also</u> <u>Pimenta</u>, 942 F. Supp. 2d at 1288 ("there is nothing in the record suggesting the Brazilian Probate Court would be unreceptive to the Application"). Indeed, the District Court for the Eastern District of Virginia recently granted an application filed by the Batistas themselves for an order to serve a subpoena *duces tecum* and a subpoena *ad testificandum* to obtain documents and testimony to be used in proceeding before the Brazilian Supreme Court. <u>See</u> <u>In re Application of Joesley Mendonca Batista, Wesley Mendonca Batista, Francisco De Assis E Silva, and Ricardo Saud for an Order To Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782</u>, Misc. No. 1:19-mc-04 (E.D. Va. Mar. 4, 2019) (copy of order attached as <u>Exhibit I</u>).

  Further, courts have determined that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties that facilitate cooperation between the U.S. federal judiciary and the foreign jurisdiction. <u>See</u> <u>In re Servicio Pan Americano de Proteccion, C.A.</u>, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (explaining that a foreign jurisdiction "has indicated its receptivity to federal judicial assistance by its signature of

treaties facilitating such cooperation."). The receptivity of Brazilian courts to U.S. judicial assistance can therefore be inferred from Brazil's ratification of the Convention for the Taking of Evidence Abroad in Civil and Criminal Matters, March 18, 1970 (known as the "Hague Evidence Convention"). See O'Keefe, 636 Fed. Appx. at 267-68 (considering whether Hong Kong was a signatory to convention in analyzing this factor); In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. 1782, No. 17-4269-KM-JBC, at *14-*17 (D.N.J. Jan. 10, 2019) (recognizing as part of Section 1782 analysis that Brazilian court would be receptive to evidence obtained abroad because Brazil is a signatory to the Hague Evidence Convention). Thus, the second Intel factor is satisfied.

### 3. The Application Is Sought in Good Faith and Not To Circumvent Foreign Proof-Gathering Restrictions

The third Intel factor examines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 265. The inquiry focuses on whether the discovery is being sought in bad faith. See, e.g., Minatec Fin. S.a.r.l v. SI Group, Inc., No. 1:08-CIV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *26-*27 (N.D.N.Y. Aug. 18, 2008) ("we find nothing within this record to support that [applicant] is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself.").

There is no requirement for an applicant to seek discovery from the foreign tribunal before filing a Section 1782 application. Mees, 793 F.3d at 303 ("We have rejected such a 'quasi-exhaustion' requirement, reasoning that it 'finds no support in the plain language of the statute and runs counter to its express purposes.") (internal citations omitted). Likewise, the fact that material sought may not be discoverable if located in the foreign jurisdiction does not mean

that the attempt to obtain such material is an effort to circumvent proof-gathering restrictions. Id. ("[S]ection 1782 contains no foreign-discoverability requirement.").

Here, there is nothing even remotely suggesting that Applicant Mota is seeking this discovery in bad faith or from some illicit motive. He is a citizen of Brazil, bringing a so-called "Popular Action" authorized under Brazilian law based on investigations conducted by Brazilian authorities and confessions by the Batistas obtained in connection therewith. The only individuals acting in bad faith here have been the Batistas and their agents, as well as corrupt politicians they bribed and those that helped orchestrate this scheme. The third Intel factor is satisfied too.

### 4. *The Discovery Sought Is Neither Unduly Intrusive Nor Burdensome*

As shown in the draft subpoena submitted herewith (see Application Ex. 2), Applicant has tried in good faith to narrowly tailor his discovery requests to focus on the above-mentioned transaction and (i) the formation and management of Blessed LLC, as well as transfers of funds into and out of that entity (including the role played by JPMC in that regard), and (ii) an account at JPMC which the Batistas have allegedly used to pay some of the bribes paid to Brazilian officials to effectuate this fraudulent scheme – some of which may have been passed through Blessed LLC. We respectfully invite the Court to review these proposed subpoenas to confirm their proper scope. Also, once issued, the recipient of this subpoena (Respondent Blessed LLC) will have an opportunity to challenge its scope (or even to move to quash it in its entirety). There is no risk here that the discovery sought by Applicant will be unfairly burdensome or intrusive, especially in light of the allegations of egregious misconduct in issue.

<u>CONCLUSION</u>

For the foregoing reasons, Applicant respectfully requests that the Court (a) grant the Application in its entirety; (b) enter the Proposed Order annexed to the Application; and (c) grant any and all other relief as the Court deems just and proper.

Dated: December 27, 2019            Respectfully submitted,

                                      MACAULEY LLC

                                    _____/s/ Thomas G. Macauley_____
                                    Thomas G. Macauley (No. 3411)
                                    300 Delaware Avenue, Suite 1018
                                    Wilmington, DE 19801
                                    (302) 656-0100

                                    *Attorneys for Applicant Maurício Mota*

<u>*Of Counsel*</u>

HINE & OGULLUK LLP
William J. Hine*
Sevan Ogulluk*
Brian W. Hine*
30 Wall Street, 8th Floor
New York, New York 10005
(212) 300-7390
wjhine@hineogulluk.com
sogulluk@hineogulluk.com
bwhine@hineogulluk.com

* Motions for *pro hac vice* admission forthcoming